## JAMES NEWMAN, et al., v. THE WOODSON NATIONAL BANK.

CREDITOR—*Not Owner of Property Attached.* Where personal property is attached as the property of R., and is claimed by N. as interpleader in the action, and in the evidence introduced it is shown that the property attached was used by R. in cultivating and stocking the farm of N., under a contract which provided that N. was to furnish the money, and R. was to use it in buying such implements and stock as he thought proper, and was given authority to sell the same without consultation with N., but was required from time to time to report all his transactions to N., and to pay him in cash the net proceeds of the farm and net increase of the stock, and at the end of ten years repay in money the amount advanced, less the amount expended upon the farm in permanent improvements, *held*, that N. was simply a creditor of R., and not the owner of the property attached.

*Error from Woodson District Court.*

THE opinion states the case.

*J. E. Pickett,* and *Charles Newman,* for plaintiffs in error.

*W. H. Slavens,* and *G. R. Stephenson,* for defendant in error.

Opinion by HOLT, C.: The Woodson National Bank brought this action against I. M. Rilea and C. A. Rilea on a promissory note given by the Rileas to the bank, and attached some personal property. The plaintiffs, James Newman and Charles Newman, interpleaded, claiming to own the property attached. The ownership of the property is the vital question to be decided in this case. In the trial at the October term, 1885, a jury was waived, and the court found in favor of the bank. The interpleaders bring the case here for review.

In the trial the only evidence offered was the testimony of James Newman, and the articles of agreement between the Newmans and I. M. Rilea. It appears that in 1880 the Newmans owned a large tract of land in Woodson county, and entered into a contract with Rilea to improve and cultivate it, and raise stock thereon. The Newmans were to furnish money to be expended by Riley in building permanent improvements, buying stock and necessary implements to carry on the farm. Rilea was to report each month his money transactions, and to give an inventory of all the stock and crops on the place twice a year, and at the end of the tenth year he was to return the money furnished, less the costs of permanent improvements, and if the Newmans furnished stock, they were to be credited as cash furnished. Rilea was to buy and raise stock on the farm, and was to have control of the buying and selling of all stock and farm produce. One-half of the net proceeds of the farm and stock should belong to Rilea, and the other half should be paid to the Newmans. Fraud or non-compliance by either party should render the contract voidable, the party complaining to give thirty days' notice.

Did the Newmans own the property, or were they simply creditors of Rilea? Let us examine: the money to buy this

property was intrusted to Rilea, with the power to purchase what he thought best. If special articles were furnished, he was charged with them, as for so much money advanced. From time to time a division was to be made of the proceeds of the farm and the net increase of the stock, and the Newmans' share was to be paid in money; at the end of the ten years the money advanced by the Newmans was to be repaid, less the amount expended in permanent improvements upon the farm. All payments were to be made to the Newmans in money, unless they elected to receive payment in some other form. Rilea could sell this property without consulting the Newmans, though he would be liable to them for the one-half of the net amount sold. At the time the goods were attached no notice had been served, as provided in the agreement, that they intended to annul their contract with Rilea.

From the terms of this contract we are convinced that the property attached was Rilea's, and that the Newmans were simply his creditors. The bank was also his creditor, but was more active in securing its claim. The property was regularly attached, was then owned by Rilea, and was subject to attachment for his debts.

A motion was made for a new trial, and one of the grounds alleged was the discovery of material evidence which could not have been produced by the exercise of reasonable diligence at the trial. We do not deem it necessary to pass upon the question of diligence or want of diligence in obtaining it, as we think the evidence alleged to have been newly discovered was not material. The judgment of the court was correct, and we therefore recommend its affirmance.

By the Court: It is so ordered.

All the Justices concurring.